IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

STACEY J. RANDALL,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

Case No. 1:15-cv-02187-AA
OPINION AND ORDER

AIKEN, Judge:

    Plaintiff Stacey J. Randall brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

    On February 16, 2012, plaintiff applied for SSI and DIB. Tr. 178, 180. She alleged disability beginning December 31, 1995 due to seizures, nerve pain, chronic pain, headaches, and problems

Page 1 - OPINION AND ORDER

with her left eye. Tr. 211. Plaintiff's medical problems began in 1995, when she was struck by a car while she was walking. Tr. 40, 269. She was hospitalized and had brain surgery. Tr. 40. The accident led to the onset of a seizure disorder. Tr. 222, 429-34, 441. After cycling through several medications that made her feel "like a zombie," she now takes a medication that does not have serious side effects and stops the seizures. Tr. 40-43. Since the accident, she has difficulty maintaining concentration "sometimes" and her attention wanders. Tr. 44-45. Nonetheless, as long as she "concentrate[s] on what [she's] doing and stay[s] in front of what [she's] doing then [she] can continue doing it usually." Tr. 45.

Although plaintiff never worked full-time after the accident, she worked part-time as a motel desk clerk and housekeeper from 1998 to 2005 and again from 2009 to 2012. Tr. 37-38, 212. She worked three to four days per week, for a total of twelve to twenty hours each week. Tr. 39. Plaintiff testified she knew the family that ran the hotel and the owners understood "what [she] had been through." Tr. 38. She worked in a team of three, which prevented the work from being "overwhelming." Tr. 38. When business slowed at the motel, one of the other employees was laid off. At that point, the work became "too much." Tr. 38. She quit the job due to "a lot of things" including seizures and physical pain. Tr. 39, 46. She asserts she left the job on doctor's orders. Tr. 266.

Plaintiff states she has difficulty with continuous activity. Tr. 237. She is able to pay attention for about thirty minutes at a time and can follow written instructions "pretty well." Tr. 242. She has no problems with personal care and needs no reminders or assistance regarding grooming or medication. Tr. 239. She washes clothes, cooks meals, shops, reads, watches movies, cares for her daughter, attends church, and volunteers by helping to feed the homeless. Tr. 239-41. She is able to pay bills, count change, handle a savings account, and use a checkbook. Tr. 241. She spends time with friends and family in person, at church, and on the phone. Tr. 241. She cannot go hiking or push herself too much physically. Tr. 242.

Plaintiff's applications were denied initially and upon reconsideration. Tr. 73, 87, 103, 119.

Page 2 - OPINION AND ORDER

On May 12, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 31. Plaintiff, represented by counsel, testified, as did a vocational expert ("VE"). Tr. 31. On June 13, 2014, the ALJ issued an unfavorable decision. Tr. 25. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's" decision. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is susceptible to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 18; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found

Page 3 - OPINION AND ORDER

plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, seizure disorder, neurocognitive disorder secondary to a closed head injury in 1995, and anxiety disorder not otherwise specificied. Tr. 18; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 19; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

> The ALJ found plaintiff retained the residual functional capacity ("RFC")
>
> to perform a range of light work as defined in 20 [C.F.R. §] 404.1567(b) and 416.067(b) except she is further limited to tasks that involve no more than occasional climbing of ladders, ropes, or scaffolds. She must avoid concentrated exposure to workplace hazards, such as unprotected heights or dangerous machinery. She can perform simple, routine tasks that involve less than occasional interaction with the public and structured, superficial interactions with co-workers. She is limited to structured, low-stress work tasks that avoid fast-paced production work and persuasive communication tasks. She can tolerate few changes in the work setting or work progress.

Tr. 21; 20 C.F.R. § 404.1520(e). At step four, the ALJ found plaintiff had no past relevant work. Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, the ALJ found plaintiff could perform a number of jobs that exist in significant numbers in the national economy, specifically mail clerk, information router, and order filler. Tr. 24. Accordingly, the ALJ found plaintiff not disabled and denied her application for benefits. Tr. 25.

## DISCUSSION

Plaintiff asserts the ALJ committed three errors. First, plaintiff contends the ALJ erred in weighing the medical opinion evidence. She avers that error, in turn, led to harmful errors at step three (when the ALJ concluded plaintiff does not suffer from a listed impairment), in the formulation of the RFC (when the ALJ omitted certain limitations in the improperly discredited evidence), and at step five (when the ALJ failed to include those limitations in his hypothetical questions to the VE). Second, plaintiff contends the ALJ erred in assigning little weight to her subjective symptom testimony. And third, plaintiff argues the ALJ erred at step five because the jobs identified by the

ALJ require abilities inconsistent with her assessed RFC. I address each argument in turn.[1]

I.  *Evaluation of Medical Evidence*

Plaintiff challenges the ALJ's decision to give little weight to the opinions of treating neurologist Dr. Slater and examining psychologist Dr. Trueblood. When a treating or examining physician's opinion conflicts with other evidence in the record, an ALJ may only reject the opinion for specific, legitimate reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A.  *Dr. Slater*

Dr. Slater, a neurologist, treated plaintiff's seizure disorder. In a February 2012 letter, he stated plaintiff sustained "permanent injuries" from the car accident, leading to "cognitive and language loss." Tr. 768. Dr. Slater opined plaintiff would be unable to "successfully compete in the open job market." Tr. 768. The ALJ gave little weight to Dr. Slater's opinion because plaintiff was able to work part-time after her injury, Dr. Slater's subsequent treatment notes indicate plaintiff's seizures are well-controlled with medication, and in 2012 plaintiff presented as alert, fully oriented, and in no acute distress. Tr. 22.

The ALJ reasonably presumed that Dr. Slater's opinion regarding plaintiff's ability to work rested in part on concerns about her seizure disorder. Medical records and plaintiff's testimony both support a conclusion that disorder is now well-controlled with medication. That is a specific, legitimate reason to discount Dr. Slater's opinion. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Moreover, the letter assesses no specific workplace limitations and instead broadly concludes plaintiff is unable to work. The ALJ was not required to defer to Dr. Slater's opinion on that "ultimate issue of disability." 20

---

[1] Plaintiff focuses on the ALJ's treatment of her seizure disorder and limitations regarding social functioning and concentration, persistence, or pace. Because she does not challenge the ALJ's other findings regarding her physical limitations, this opinion leaves those findings undisturbed.

Page 5 - OPINION AND ORDER

C.F.R. § 404.1527(e). The ALJ erred in relying on plaintiff's ability to work at the motel, as discussed in more detail below. But that error was harmless with respect to Dr. Slater's opinion because the ALJ's decision to discredit that opinion remains supported by substantial evidence even without relying on plaintiff's work history. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).

    B.    *Dr. Trueblood*

With respect to examining psychologist Dr. Trueblood's opinion, the key inquiry concerns the extent of plaintiff's problems with social functioning and with concentration, persistence, and pace. Dr. Trueblood assessed marked limitations in both areas. Crediting Dr. Trueblood's assessment as true, plaintiff would be found disabled at step three because she would satisfy the "Part B" criteria of listing 12.02, which addresses organic mental disorders. 20 C.F.R. § 404, subpt. P, app. 1, 12.02. Plaintiff also asserts the ALJ erred by omitting specific limitations assessed by Dr. Trueblood from the RFC. I conclude the ALJ erred in discrediting Dr. Trueblood's opinion, and that the error was harmful in the formulation of the RFC and at step five of the analysis.

In January 2014, Dr. Trueblood performed a neuropsychological screening exam. Dr. Trueblood reported plaintiff demonstrated "[s]ignificant weakness in maintaining attention" and "significant impulsiveness" likely to lead to "disinhibited behavior" in social settings. Tr. 796, 799. Dr. Trueblood concluded plaintiff's "area of greatest weakness" was executive functioning, noting plaintiff showed "substantial weakness in planning, exercising foresight . . . [and] self-monitoring of her performance accuracy." Tr. 799. Dr. Trueblood predicted plaintiff would have "marked" difficulty in the areas of social functioning and concentration, persistence or pace. Tr. 804. He "lean[ed] towards the conclusion that it would be unlikely that [plaintiff] would attain and maintain employment[.]" Tr. 800. Dr. Trueblood was surprised plaintiff had been able to work at the motel for so long and "wonder[ed] if there was some extra support in that work setting[.]" Tr. 800.

Dr. Trueblood's opinion conflicts with the opinions of three other psychologists in the record. First, it conflicts with the opinion of Dr. Cole, another examining psychologist. In September 2012,

Page 6 - OPINION AND ORDER

Dr. Cole performed a consultative psychodiagnostic evaluation to assess plaintiff's cognitive abilities. Dr. Cole found no significant problems in the areas of attention and concentration, and above average immediate and delayed memory. Tr. 442-43. Dr. Trueblood's opinion also conflicts with the opinions of the non-examining agency psychologists. In September 2012, reviewing psychologist Dr. Hennings concluded plaintiff's cerebral trauma and anxiety disorders were "non severe." Tr. 68. Dr. Hennings assessed mild restrictions in social functioning with no other significant cognitive limitations. Tr. 68. On reconsideration in March 2013, reviewing psychologist Dr. Anderson generally agreed with Dr. Hennings's assessment, but also concluded plaintiff had mild restrictions in the area of concentration, persistence, or pace. Tr. 98.

The ALJ acknowledged the conflict among the medical opinions. He concluded that Dr. Trueblood's opinion was entitled to less weight than Dr. Cole's because (1) Dr. Trueblood had limited access to medical records and so did not have the benefit of reviewing Dr. Cole's assessment; (2) the limitations assessed by Dr. Trueblood are inconsistent with plaintiff's ability to work part-time at the motel for so long after the accident; and (3) the limitations assessed by Dr. Trueblood are inconsistent with plaintiff's self-reported activities of daily living.

The ALJ erred in rejecting Dr. Trueblood's assessment because he never reviewed Dr. Cole's assessment. Access to medical records often is a permissible consideration — for example, if the plaintiff has a relationship with a treating provider or when multiple examining sources have reached similar conclusions. Here, however, the conflicting records are both the result of single-day evaluations by consultative psychologists, neither of whom had the benefit of reviewing the other's work. The fact that Dr. Trueblood did not read Dr. Cole's evaluation does not undermine the validity of Dr. Trueblood's report.

The ALJ also erred in citing plaintiff's work at the motel as a reason for discrediting Dr. Trueblood's opinion. Plaintiff argues the record shows she was given special accommodations and support to permit her to continue working at the motel. The Commissioner disagrees and contends the record does not compel the conclusion plaintiff's work was sheltered. I agree with the

Page 7 - OPINION AND ORDER

Commissioner that the record does not *compel* a conclusion plaintiff's work was sheltered or supported. The direct evidence on this point consists entirely of plaintiff's testimony, which itself does not provide many specifics. That testimony is arguably corroborated by Dr. Trueblood's surprise that plaintiff was able to work and his supposition that she may have received special employment accommodations.

Even though the evidence suggesting plaintiff had special work supports at the motel is limited, the ALJ erred by failing to address that evidence. Similarly, although the ALJ acknowledged that plaintiff never worked at the substantial gainful activity level at the motel, he did not address in any detail the fact that she worked limited hours. If plaintiff was only able to work part-time with significant accommodations, that work does not suggest she would be able to compete for full-time work in the open job market. Without information about whether or how the ALJ considered the evidence plaintiff's work was sheltered or limited, I cannot conclude the motel work is a legitimate reason to discount Dr. Trueblood's opinion.

Finally, the ALJ partially erred in his assessment of plaintiff's self-reported activities of daily living. The ALJ reasonably considered plaintiff's testimony that she takes her daughter to various activities, socializes frequently with family and friends, attends church, volunteers serving meals to the homeless, and has never been laid off from a job due to conflict with coworkers or supervisors to be inconsistent with Dr. Trueblood's assessment of marked difficulties in social functioning. However, the same cannot be said of plaintiff's difficulties with concentration, persistence or pace. Plaintiff's testimony regarding her own limitations in this area was mixed. *Compare* Tr. 44 ("When I start something I tend to go off onto something else.") *and* Tr. 50 (plaintiff explaining she sometimes burns food when she walks away from the burner and forgets about it) *with* Tr. 45 ("[A]s long as I concentrate on what I'm doing and stay in front of what I'm doing then I can continue doing it usually.") *and* Tr. 239 (plaintiff stating she needs no special reminders or help with medications or grooming). Dr. Trueblood specifically stated that plaintiff likely has limited insight into her own functioning and thus may significantly underreport difficulties. Tr. 794. Dr. Trueblood also

explained in detail test results demonstrating problems with concentration and persistence. Tr. 796-97. The ALJ erred in concluding plaintiff's reported activities of daily living were inconsistent with Dr. Trueblood's assessment of marked difficulties in the area of concentration, persistence, or pace.

Even though the ALJ committed several errors in evaluating Dr. Trueblood's opinion, the errors were harmless with respect to the step three analysis. Plaintiff's testimony about her activities is sufficient, standing alone, to support the ALJ's decision to discredit Dr. Trueblood's opinion regarding social functioning. Because she has neither marked restrictions in activities of daily living nor multiple episodes of decompensation, without a marked restriction in social functioning, plaintiff does not meet the requirements of listing 12.02.[2]

However, I cannot conclude the errors were harmless with respect to formulation of the RFC and identification of available jobs at step five. As explained above, the ALJ's decision to discredit Dr. Trueblood's assessment of marked difficulties with concentration, persistence, or pace is not supported by substantial evidence. That error is only harmless if the RFC adequately accounted for such difficulties. The ALJ limited plaintiff to "simple, routine tasks" and "structured, low-stress work tasks that avoid fast-paced production work and persuasive communication tasks." The ALJ also noted there could be "few changes in the work setting or work progress." There is no testimony from the VE addressing whether those restrictions account for the limitations of an individual with marked difficulties with concentration, persistence, and pace. Without such testimony, it remains possible the error harmfully affected the analysis at step five. *See Russell v. Colvin*, 9 F. Supp. 3d 1168, 1180 (D. Or. 2014) (documenting VE's testimony in Social Security disability hearing that if an individual has a "marked (unable to persist when it occurs occasionally) limitation on her ability to maintain attention and concentration even for simple, routine tasks and this were to occur on an

---

[2] Plaintiff also argues the ALJ erred at step three by concluding her limitations did not equal listing 12.02. She does not support her equivalence argument with anything beyond the conclusory statement that her "combined impairments result in her being functionally and medically as limited as, if not more limited than, and individual whose impairments are deemed to meet listing 12.02." Pl.'s Br. at 14. This argument is inadequately supported and thus waived. *Martinez v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996).

Page 9 - OPINION AND ORDER

occasional basis such that the ability to persist for simple, routine tasks would be interrupted, then all jobs would be precluded").

II.   *Plaintiff's Subjective Symptom Testimony*

The ALJ also gave limited weight to plaintiff's testimony regarding the intensity, persistence, and limiting effect of her symptoms. I conclude that with respect to plaintiff's cognitive limitations, the ALJ failed to support that decision with clear, convincing reasons.

In evaluating subjective symptom testimony, the ALJ conducts a two-step inquiry. First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citation and quotation marks omitted). If the first step of the test is satisfied, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1015 (citation and quotation marks omitted).

The ALJ found plaintiff's medically determinable impairments could be expected to produce the symptoms alleged, and found no evidence of malingering. He then assigned limited weight to plaintiff's subjective symptom testimony for several of the reasons already addressed in this opinion: her seizures are now well-controlled with medication, her self-reported activities of daily living are inconsistent with the alleged severity of her symptoms, and she was able to work for many years after the car accident. The ALJ also noted the alleged onset date of disability does not clearly correspond to her injury date.

As explained above, the record supports the conclusion plaintiff's seizures are well-controlled with medication. Unless there is new evidence introduced on remand, there is no reason for the ALJ to revisit his evaluation of plaintiff's subjective symptom testimony to the extent it addresses her seizure disorder.

However, for the reasons explained in the previous section, I cannot determine whether plaintiff's ability to work at the motel constitutes a convincing reason to discredit her subjective

symptom testimony. Because the ALJ did not address evidence of extra supports in the work environment or the effect of plaintiff's part-time status, I cannot conduct a meaningful review of his reasoning. Similarly, I find the ALJ erred in finding plaintiff's activities of daily living inconsistent with her statements about her cognitive impairments. The ALJ did not adequately address Dr. Trueblood's opinion that plaintiff would have limited ability to accurately assess her own capabilities in this area. Finally, the ALJ erred in concluding the alleged onset date of disability does not correspond to plaintiff's injury date, as it followed closely on the heels of the car accident.

I cannot conclude these errors were harmless. Plaintiff testified she is unable to sustain full-time work due to the combination of her impairments. Crediting that statement as true, she would be found disabled. Moreover, crediting some of plaintiff's other statements about her cognitive limitations as true could affect the formulation of the RFC and the analysis at step five.

III. *Step Five Jobs Analysis*

Plaintiff contends the ALJ erred at step five because all three jobs he identified cannot be performed by a person with plaintiff's assessed RFC. The Commissioner concedes that two of the three jobs identified at step five of the analysis may conflict with the RFC. The Commissioner nonetheless contends the ALJ properly concluded the job of information router could be performed consistent with the RFC. Information router is a reasoning level two job and requires the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, app. C. Plaintiff contends those requirements are inconsistent with a limitation to simple, routine tasks. That argument has been squarely rejected by this Court. *Gilbert v. Colvin*, 2015 WL 1478441, *7 (D. Or. Mar. 31, 2015). The job of information router is consistent with plaintiff's assessed RFC.

IV. *Type of Remand*

The final question before the Court is whether to remand for further proceedings or an immediate award of benefits. "The issue turns on the utility of further proceedings." *Petty v. Colvin*,

20 F. Supp. 3d 770, 777 (D. Or. May 7, 2014). Although plaintiff recites the Ninth Circuit test on this point, she does not address the utility of further proceedings in any detail.

In this case, further proceedings are necessary. The ALJ did not address the evidence in the record suggesting plaintiff's work at the motel may have been supported or sheltered. Remand will permit the ALJ to address this issue and supplement the record as necessary. The ALJ relied on plaintiff's work at the motel to discredit both Dr. Trueblood's opinion and plaintiff's subjective symptom testimony. Understanding the nature of her work at the hotel is therefore critical to determining whether the Commissioner's decision is supported by substantial evidence.

## CONCLUSION

The Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion. On remand, the ALJ must:

1. Address whether plaintiff's employment at the motel included special accommodations relevant to her difficulties with concentration, persistence, or pace;

2. Reevaluate Dr. Trueblood's assessment of plaintiff's limitations in the area of concentration, persistence, or pace, specifically addressing Dr. Trueblood's statement that plaintiff is unlikely to be able to assess her own limitations in this area;

3. Reconsider the credibility of plaintiff's subjective symptom testimony regarding her cognitive limitations;

4. Reformulate the RFC as necessary; and

5. Reassess the availability of jobs plaintiff could perform at step five.

IT IS SO ORDERED.

Dated this 30 day of November 2016.

Ann Aiken
United States District Judge